## UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

| | | |
|---|---|---|
| *KEITH LACOURSE,* | ) | |
| | ) | |
| *Plaintiff* | ) | |
| | ) | |
| *v.* | ) | *No. 2:10-cv-420-GZS* |
| | ) | |
| *HALLKEEN MANAGEMENT, INC.,* | ) | |
| | ) | |
| *Defendant* | ) | |

## RECOMMENDED DECISION ON
## MOTION FOR SUMMARY JUDGMENT

Defendant HallKeen Management, Inc. ("HallKeen") moves for summary judgment as to plaintiff Keith LaCourse's sole claim against it, for whistleblower retaliation in violation of the Maine Whistleblowers' Protection Act ("MWPA"), 26 M.R.S.A. §§ 831-40. *See* Defendant's Motion for Summary Judgment ("Motion") (Docket No. 13) at 1-2; Plaintiff's Complaint of Retaliation ("Complaint") (Docket No. 1-1), Exh. A to Notice of Removal of Action Under § 1441(a) and 1446(b) ("Notice of Removal") (Docket No. 1).[1] For the reasons that follow, I recommend that the Motion be denied.

### I. Applicable Legal Standards

### A. Federal Rule of Civil Procedure 56

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Santoni v. Potter*, 369 F.3d 594, 598 (1st Cir. 2004). "A dispute is genuine if the evidence about the fact is such that a reasonable jury could resolve the point in the favor of the non-moving party." *Rodríguez-Rivera v. Federico Trilla Reg'l Hosp. of Carolina*, 532 F.3d 28, 30

---

[1] HallKeen, a Massachusetts corporation, removed this action to this court from the Maine Superior Court on diversity grounds. *See* Notice of Removal ¶¶ 1, 3-4.

(1st Cir. 2008) (quoting *Thompson v. Coca-Cola Co.*, 522 F.3d 168, 175 (1st Cir. 2008)). "A fact is material if it has the potential of determining the outcome of the litigation." *Id.* (quoting *Maymi v. P.R. Ports Auth.*, 515 F.3d 20, 25 (1st Cir. 2008)).

The party moving for summary judgment must demonstrate an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). In determining whether this burden is met, the court must view the record in the light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences in its favor. *Santoni,* 369 F.3d at 598. Once the moving party has made a preliminary showing that no genuine issue of material fact exists, the nonmovant must "produce specific facts, in suitable evidentiary form, to establish the presence of a trialworthy issue." *Triangle Trading Co. v. Robroy Indus., Inc.*, 200 F.3d 1, 2 (1st Cir. 1999) (citation and internal punctuation omitted); Fed. R. Civ. P. 56(c). "As to any essential factual element of its claim on which the nonmovant would bear the burden of proof at trial, its failure to come forward with sufficient evidence to generate a trialworthy issue warrants summary judgment to the moving party." *In re Spigel*, 260 F.3d 27, 31 (1st Cir. 2001) (citation and internal punctuation omitted).

**B. Local Rule 56**

The evidence that the court may consider in deciding whether genuine issues of material fact exist for purposes of summary judgment is circumscribed by the local rules of this district. *See* Loc. R. 56. The moving party must first file a statement of material facts that it claims are not in dispute. *See* Loc. R. 56(b). Each fact must be set forth in a numbered paragraph and supported by a specific record citation. *See id.* The nonmoving party must then submit a responsive "separate, short, and concise" statement of material facts in which it must "admit, deny or qualify the facts by reference to each numbered paragraph of the moving party's

statement of material facts[.]" Loc. R. 56(c). The nonmovant likewise must support each denial or qualification with an appropriate record citation. *See id*. The nonmoving party may also submit its own additional statement of material facts that it contends are not in dispute, each supported by a specific record citation. *See id*. The movant then must respond to the nonmoving party's statement of additional facts, if any, by way of a reply statement of material facts in which it must "admit, deny or qualify such additional facts by reference to the numbered paragraphs" of the nonmovant's statement. *See* Loc. R. 56(d). Again, each denial or qualification must be supported by an appropriate record citation. *See id*.

Failure to comply with Local Rule 56 can result in serious consequences. "Facts contained in a supporting or opposing statement of material facts, if supported by record citations as required by this rule, shall be deemed admitted unless properly controverted." Loc. R. 56(f). In addition, "[t]he court may disregard any statement of fact not supported by a specific citation to record material properly considered on summary judgment" and has "no independent duty to search or consider any part of the record not specifically referenced in the parties' separate statement of fact." *Id*.; *see also, e.g., Sánchez-Figueroa v. Banco Popular de P.R.*, 527 F.3d 209, 213-14 (1st Cir. 2008); Fed. R. Civ. P. 56(e)(2) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed for purposes of the motion[.]").

## II.  Factual Background

The parties' statements of material facts, credited to the extent that they are admissible over any objection and either admitted or supported by record citations in accordance with Local

Rule 56, with disputes resolved in favor of LaCourse as nonmovant, reveal the following relevant facts.[2]

## A. Events Leading to Filing of Maine Human Rights Commission ("MHRC") Complaint

LaCourse was employed by HallKeen as a maintenance technician. Defendant's Statement of Undisputed Material Facts ("Defendant's SMF") (Docket No. 12) ¶ 1; Plaintiff's Response to Defendant's Statement of Undisputed Facts ("Plaintiff's Opposing SMF") (Docket No. 22) ¶ 1. He worked for HallKeen for almost 10 years. *Id*. ¶ 2.[3] LaCourse was initially assigned to two buildings, Butler and Payson in Portland. *Id*. ¶ 3. Eventually, he was moved to 100 State Street in Portland. *Id*.[4]

As part of his job duties, LaCourse was on call every third weekend. *Id*. ¶ 4. Weekend coverage was from 4 p.m. Friday afternoon until 8 a.m. Monday morning. *Id*. ¶ 5. Maintenance technicians were paid for four hours of overtime when they were on call regardless of whether they were called out. *Id*. ¶ 6.

In March 2004, LaCourse received his annual performance review and was given the highest rating, "outstanding." Plaintiff's Separate Statement of Material Facts ("Plaintiff's Additional SMF") (Docket No. 23) ¶ 1; Defendant's Reply Statement of Material Facts ("Defendant's Reply SMF") (Docket No. 26) ¶ 1.[5] In his annual performance review in March 2005, he was again rated as "outstanding." *Id*. ¶ 2. The review stated that LaCourse "performs

---

[2] To the extent that I have incorporated one party's qualification into the statement of the other, I have determined that the qualification is supported by the record citation(s) given.

[3] LaCourse qualifies this statement, asserting, in cognizable part, that he worked for HallKeen's predecessor, Allen Management Company, for about 10 years before commencing work for HallKeen, which took over the business. Plaintiff's Opposing SMF ¶ 2; Deposition of Keith LaCourse ("LaCourse Dep.") (Docket No. 12-1), Exh. A to Defendant's SMF, at 7.

[4] The plaintiff, born on June 26, 1947, is 64 years old. Complaint ¶ 5; Answer (Docket No. 6) ¶ 5 (mistakenly referencing paragraph 2 of Complaint).

[5] I omit the second sentence of paragraph 1, sustaining HallKeen's objection that it is not supported by the citation given.

the maintenance in a professional manner[,]" "has set high goals in regards to job performance and diligently strives to attain them[,]" and "is highly respected and trusted by tenants at Butler School and Payson Property." *Id.*

On December 7, 2005, HallKeen reduced LaCourse's hours from 40 to 30. *Id.* ¶ 3. He was the only maintenance person at the Butler/Payson property at that time. Defendant's SMF ¶ 8; Plaintiff's Opposing SMF ¶ 8. In March 2006, LaCourse again received an annual review that rated his performance as "outstanding." Plaintiff's Additional SMF ¶ 4; Defendant's Reply SMF ¶ 4. In October 2006, Sam Barakat, LaCourse's new supervisor, told his former supervisor, Artie Johnson, that HallKeen "needed to get rid of Keith because he was too old." Plaintiff's Additional SMF ¶ 5; Exh. 5 (Docket No. 24-5) to Affidavit of Keith LaCourse ("LaCourse Aff.") (Docket No. 24).[6] In December 2006, HallKeen transferred LaCourse to 100 State Street. Plaintiff's Additional SMF ¶ 6; Defendant's Reply SMF ¶ 6. The residents of Butler and Payson were extremely upset by the transfer and drafted and signed a petition requesting that it be reconsidered. Plaintiff's Additional SMF ¶ 6; LaCourse Aff. ¶ 8 & Exh. 7 (Docket No. 24-7) thereto.[7]

## B. Filing of MHRC Complaint and Post-Filing Events

On February 21, 2007, LaCourse filed a charge of age discrimination with the MHRC. Defendant's SMF ¶ 9; Plaintiff's Opposing SMF ¶ 9. He alleged age discrimination on the basis of the reduction in his hours and his transfer. Plaintiff's Additional SMF ¶ 7; Defendant's Reply SMF ¶ 7.

---

[6] HallKeen denies this statement, Defendant's Reply SMF ¶ 5; however, I view the evidence in the light most favorable to LaCourse, as nonmovant.
[7] HallKeen's objection to this statement on relevance grounds, Defendant's Reply SMF ¶ 6, is overruled.

In March 2007, HallKeen gave two recently hired employees three percent annual raises but gave LaCourse only a one-time three percent bonus. Plaintiff's Additional SMF ¶ 7; LaCourse Aff. ¶ 9 & Exh. 8 (Docket No. 24-8) thereto.[8] Prior to receiving the bonus, LaCourse was the highest paid maintenance person and was at the top of the pay scale. Defendant's SMF ¶ 11; LaCourse Dep. at 30-31.[9]

Following the filing of LaCourse's MHRC complaint and until his termination, supervisors began frequently ignoring him, sometimes physically turning their backs to him when he entered a room or saying hello to a person accompanying him but not to him. Plaintiff's Additional SMF ¶ 8; LaCourse Aff. ¶ 10.[10] On at least one occasion, LaCourse's supervisor bought dinner for a co-worker but not for him. Plaintiff's Additional SMF ¶ 9; LaCourse Aff. ¶ 10.[11] Within a month of LaCourse's filing of his MHRC complaint, HallKeen began to assign him more arduous duties than were assigned to others. Plaintiff's Additional SMF ¶ 10; LaCourse Aff. ¶ 10. These assignments, examples of which follow, became even more pronounced after the plaintiff settled his MHRC complaint. *Id.*[12]

1.      On a particularly hot, muggy day in June 2007, Smith reassigned LaCourse from an indoor, air-conditioned job and directed him to dig up a sidewalk with a cement chipper

---

[8] HallKeen denies this, Defendant's Reply SMF ¶ 7; however, I view the evidence in the light most favorable to LaCourse, as nonmovant. I omit the second sentence of paragraph 7, Plaintiff's Additional SMF ¶ 7, which is neither admitted nor supported by the citation given.

[9] LaCourse purports to deny this statement, Plaintiff's Opposing SMF ¶ 11, but the record material that he cites, which is the same material cited by HallKeen, does not controvert it.

[10] HallKeen denies that supervisor Irene Smith, now Irene S. Severance, ever turned her back on LaCourse, Defendant's Reply SMF ¶ 8; however, I view the evidence in the light most favorable to LaCourse, as nonmovant. HallKeen otherwise qualifies this statement, asserting that Severance was no longer the property manager after February 2008 and did not directly supervise LaCourse after that time, and that, insofar as LaCourse complains of similar conduct by Russell Johnson, his deposition testimony indicates that it occurred when Severance was LaCourse's supervisor, that is, prior to February 2008. *Id.*; Deposition of Irene S. Severance ("Severance Dep.") (Docket No. 26-3), Exh. C to Defendant's Reply SMF, at 6-7; LaCourse Dep. at 60.

[11] HallKeen denies this statement, Defendant's Reply SMF ¶ 9; however, I view the evidence in the light most favorable to LaCourse, as nonmovant.

[12] HallKeen denies paragraph 10, Defendant's Reply SMF ¶ 10; however, I view the evidence in the light most favorable to LaCourse, as nonmovant.

without help from the maintenance men on duty. Plaintiff's Additional SMF ¶ 11; Plaintiff's Responses to Defendant's First Set of Interrogatories ("Plaintiff's Interrog. Resp."), LaCourse Dep. Exh. 3, ¶ 5.[13] LaCourse cleaned out a hole with a hammer and chisel, mixed cements, and re-cemented the area. Defendant's SMF ¶ 14; Plaintiff's Opposing SMF ¶ 14. The job took an hour and a half. *Id*. ¶ 15.

2.      When tenants moved out, maintenance would have to repair, paint, and prepare the apartment for the incoming tenant. Plaintiff's Additional SMF ¶ 12; Defendant's Reply SMF ¶ 12. As part of the preparation, the bathrooms would be overhauled and redone, which included pulling up the toilet, replacing all of the flanges, removing all of the grit and grime from the flows, replacing the tiles, replacing the baseboard, removing the scum from the tub and the toilet, and painting the walls. *Id*. ¶ 13. The work done in the bathroom was considered the worst assignment in the whole process. Plaintiff's Additional SMF ¶ 14; LaCourse Aff. ¶ 10.[14] Before LaCourse filed his MHRC complaint, maintenance personnel, including LaCourse, would rotate the undesirable bathroom work so that no one person would always be stuck with that assignment. Plaintiff's Additional SMF ¶ 15; Defendant's Reply SMF ¶ 15. Within approximately one month after LaCourse filed his MHRC complaint, and to an even greater

---

[13] HallKeen's objection to this statement on the basis of contradictions between LaCourse's sworn interrogatory answer and his deposition testimony, Defendant's Reply SMF ¶ 11, is overruled. HallKeen cites no authority for the proposition that contradictory testimony of this nature justifies disregard of a statement on summary judgment. To the extent that it relies *sub silentio* on *Colantuoni v. Alfred Calcagni & Sons, Inc.*, 44 F.3d 1 (1st Cir. 1994), that case is distinguishable in that it involves the creation of a conflict to resist summary judgment. *See Colantuoni*, 44 F.3d at 4-5 ("When an interested witness has given clear answers to unambiguous questions, he cannot create a conflict and resist summary judgment with an affidavit that is clearly contradictory, but does not give a satisfactory explanation of why the testimony is changed.").

[14] HallKeen's objection to this statement on the ground that it constitutes a subjective opinion rather than a fact, Defendant's Reply SMF ¶ 14, is overruled. HallKeen offers no reason to doubt that LaCourse, a longtime maintenance technician, had reason to know from personal experience which jobs were considered the worst among the maintenance crew. For purposes of the instant motion, that opinion constitutes a "fact." HallKeen alternatively denies the statement, *id*.; however, I view the evidence in the light most favorable to LaCourse, as nonmovant.

degree after he settled it, he was constantly assigned the least desirable bathroom work. Plaintiff's Additional SMF ¶ 16; LaCourse Aff. ¶ 10.[15]

3.     In Apartment 412, the toilet constantly backed up.  Plaintiff's Additional SMF ¶ 17; Defendant's Reply SMF ¶ 17.  The backup was caused by large feces clogging the toilet. Plaintiff's Additional SMF ¶ 17; LaCourse Aff. ¶ 10.  Maintenance would have to unclog the toilet, which meant removing the feces with a big spoon into a bucket.  *Id.*[16]  Before LaCourse filed his MHRC complaint, he and other maintenance personnel would rotate the undesirable bathroom work so that no one would always be stuck with this assignment.  Plaintiff's Additional SMF ¶ 18; LaCourse Aff. ¶ 10.  After LaCourse filed his complaint, he constantly was assigned the task of removing the feces.  Plaintiff's Additional SMF ¶ 19; LaCourse Aff. ¶ 10.[17]

4.     In anticipation of a HUD inspection, maintenance scheduled each employee to vacuum two floors.  Plaintiff's Additional SMF ¶ 20; LaCourse Aff. ¶ 10.  However, LaCourse had to vacuum all six floors, which took two or three days.  *Id.*  The work was extremely painful for him.  *Id.*[18]

---

[15] HallKeen denies this statement, Defendant's Reply SMF ¶ 16; however, I view the evidence in the light most favorable to LaCourse, as nonmovant.

[16] HallKeen qualifies this statement, asserting that, according to Barakat, maintenance employees never were instructed that they had to "remove feces with a big spoon into a bucket" to address the clogged toilet issue involving Apartment 412.  Defendant's Reply SMF ¶ 17; Affidavit of Hesham Barakat ("Barakat Aff.") (Docket No. 26-1), Exh. A thereto, ¶ 13.

[17] HallKeen denies that the effort to rotate maintenance tasks changed, Defendant's Reply SMF ¶¶ 18-19; however, I view the evidence in the light most favorable to LaCourse, as nonmovant.

[18] I omit LaCourse's further statement that the work was painful "because of a medical condition in his ribs and back[,]" Plaintiff's Additional SMF ¶ 20, sustaining HallKeen's objection that LaCourse fails to establish that he had a specific medical condition, Defendant's Reply SMF ¶ 20.  HallKeen otherwise denies paragraph 20, *id.*; however, I view the evidence in the light most favorable to LaCourse, as nonmovant.

5. LaCourse began to be assigned more strenuous cleaning jobs, such as mopping/buffing the floors and cleaning the bathrooms, stairs, and offices, and less maintenance work. Plaintiff's Additional SMF ¶ 21; LaCourse Aff. ¶ 10.[19]

6. HallKeen removed LaCourse's assignment to go through the building in the morning and check for burnt-out lights and instead made him patrol the outside grounds to pick up trash. Plaintiff's Additional SMF ¶ 23; LaCourse Aff. ¶ 10.[20]

7. Maintenance was responsible for snow removal. Plaintiff's Additional SMF ¶ 24; Defendant's Reply SMF ¶ 24. Snow removal essentially consisted of shoveling the stairs and snow-blowing the walkways. Plaintiff's Additional SMF ¶ 24; LaCourse Aff. ¶ 10. Shoveling was much more difficult than running the snow blower. *Id.* LaCourse constantly ended up having to shovel. *Id.*[21]

HallKeen also began to change LaCourse's schedule frequently, thus forcing him to change scheduled plans or preventing him from making plans. Plaintiff's Additional SMF ¶ 22; LaCourse Aff. ¶ 10.[22] Management began to track LaCourse's every location at work but did not do so with other employees. Plaintiff's Additional SMF ¶ 25; LaCourse Aff. ¶ 10.[23] LaCourse's supervisor, Russ Johnson, would yell at him but did not yell at others. Plaintiff's Additional

---

[19] I omit LaCourse's further statement that the "cleaning work was difficult . . . because of his medical condition[,]" Plaintiff's Additional SMF ¶ 21, sustaining HallKeen's objection that LaCourse fails to establish that he had a specific medical condition, Defendant's Reply SMF ¶ 21. HallKeen otherwise denies paragraph 21, *id.*; however, I view the evidence in the light most favorable to LaCourse, as nonmovant.

[20] HallKeen denies this, Defendant's Reply SMF ¶ 23; however, I view the evidence in the light most favorable to LaCourse, as nonmovant.

[21] HallKeen denies the second, third, and fourth sentences of paragraph 24, Defendant's Reply SMF ¶ 24; however, I view the evidence in the light most favorable to LaCourse, as nonmovant.

[22] HallKeen denies this, Defendant's Reply SMF ¶ 22; however, I view the evidence in the light most favorable to LaCourse, as nonmovant.

[23] HallKeen denies this, Defendant's Reply SMF ¶ 25; however, I view the evidence in the light most favorable to LaCourse, as nonmovant.

SMF ¶ 26; LaCourse Aff. ¶ 10.[24]  HallKeen took away the plaintiff's cell phone, except for on weekends.  Plaintiff's Additional SMF ¶ 27; LaCourse Aff. ¶ 10.[25]  HallKeen refused LaCourse's requests to restore him to a 40-hour workweek.  Plaintiff's Additional SMF ¶ 28; LaCourse Aff. ¶ 10.[26]

On March 28, 2008, LaCourse's supervisor, Denise Paradis, spoke to him about his parking in a resident space in the property garage and told him that he was not allowed to park in any tenant spots in the garage.  Defendant's SMF ¶ 16; Affidavit of Denise Paradis ("Paradis Aff.") (Docket No. 12-3), Exh. C thereto, ¶ 3.[27]  There were spaces for the employees to park in a parking lot down the street. Defendant's SMF ¶ 18; Plaintiff's Opposing SMF ¶ 18.[28]  Employee parking was provided at no cost to HallKeen employees.  *Id.* ¶ 19.  LaCourse had a parking permit for the parking lot designated for employees.  *Id.* ¶ 20.  HallKeen did not have a policy prohibiting employees from parking at 100 State Street in a tenant's spot with the tenant's permission.  Plaintiff's Additional SMF ¶ 29; LaCourse Aff. ¶ 11.[29]

---

[24] HallKeen qualifies this statement, asserting, in cognizable part, that LaCourse testified that Johnson yelled at him once, in July 2008, after LaCourse failed to respond to a radio call.  Defendant's Reply SMF ¶ 26; LaCourse Dep. at 43-46, 67.

[25] HallKeen qualifies this statement, asserting, in cognizable part, that, as of May 2008, pursuant to the parties' settlement agreement, LaCourse agreed that he would have access to a cell phone provided by HallKeen on the weekends.  Defendant's Reply SMF ¶ 27; Settlement Agreement and Release of Claims ("Settlement Agreement"), LaCourse Dep. Exh. 5, § 2.3.

[26] HallKeen qualifies this statement, asserting, in cognizable part, that the Settlement Agreement clarified that LaCourse's schedule would remain at 30 hours per week.  Defendant's Reply SMF ¶ 28; Settlement Agreement § 2.2.

[27] LaCourse denies that he lacked permission to park in the tenant's spot, but does not deny that Paradis spoke to him as set forth in this statement.  Plaintiff's Opposing SMF ¶ 16; LaCourse Aff. ¶ 11.

[28] LaCourse qualifies this statement, asserting that those spaces were located down the street from 100 State Street, and employees therefore tried to park on the street closer to 100 State Street.  Plaintiff's Opposing SMF ¶ 18; LaCourse Dep. at 36-37.

[29] HallKeen qualifies this statement, asserting that, although there is no written policy of record, Barakat testified that HallKeen did not allow maintenance employees to park in the 100 State Street garage.  Defendant's Reply SMF ¶ 29; Deposition of Hesham Barakat ("Barakat Dep.") (Docket No. 26-4), Exh. D thereto, at 37.  I omit paragraph 30, Plaintiff's Additional SMF ¶ 30, sustaining HallKeen's objection that it is unsupported by the citation given, Defendant's Reply SMF ¶ 30.

HallKeen issued pagers to its on-call weekend maintenance technicians. Plaintiff's Additional SMF ¶ 31; Defendant's Reply SMF ¶ 31. LaCourse lived about 45 minutes from work. *Id*. ¶ 32. LaCourse always answered his pages, but sometimes his pager did not work. Plaintiff's Additional SMF ¶ 32; LaCourse Dep. at 38.[30] To address that issue, LaCourse told the answering service to call him by phone, if he did not answer the page. Plaintiff's Additional SMF ¶ 33; LaCourse Dep. at 38.

On March 29, 2008, at 2:36 a.m., a tenant called the answering service because she had been locked out of her apartment. Plaintiff's Additional SMF ¶ 34; Defendant's Reply SMF ¶ 34. The call was categorized as an emergency. *Id*. ¶ 35. In response to the call, the answering service paged LaCourse at 2:36 a.m., 2:51 a.m., and 3:06 a.m. *Id*. ¶ 36. LaCourse did not receive the page, and the answering service did not call him. Plaintiff's Additional SMF ¶ 37; LaCourse Dep. at 38-39.[31] The answering service then contacted Barakat, who lives at 100 State Street, and Barakat handled the emergency call. Plaintiff's Additional SMF ¶ 38; Defendant's Reply SMF ¶ 38. HallKeen did not question LaCourse about the emergency call until April 9, 2008, when Paradis asked him why he did not respond to the pages on March 29. Plaintiff's Additional SMF ¶ 39; Exh. 2 (Docket No. 12-5) to Paradis Aff.[32] Paradis' memorandum of her conversation with LaCourse states, *inter alia*: "Keith stated that he did not receive a page. Keeps pager with him all night, it did not go off." Plaintiff's Additional SMF ¶ 40; Defendant's Reply

---

[30] HallKeen's objection to this statement on the basis that there insufficient facts of record that the pager did not always work, Defendant's Reply SMF ¶ 32, is overruled. LaCourse's sworn deposition testimony suffices to support the statement. HallKeen alternatively denies the statement, *id.*; however, I view the evidence in the light most favorable to LaCourse, as nonmovant.

[31] HallKeen denies that LaCourse did not receive the page, Defendant's Reply SMF ¶ 37; however, I view the evidence in the light most favorable to LaCourse, as nonmovant.

[32] HallKeen qualifies this statement, asserting, in cognizable part, that LaCourse was given a verbal warning for failing to respond to the three pages. Defendant's Reply SMF ¶ 39; Exh. 2 to Paradis Aff.

SMF ¶ 40.[33]  Despite LaCourse's explanation, Paradis issued a verbal warning to LaCourse and said she "would be monitoring the on[-]call activity."  *Id.* ¶ 41.

The staff was well aware and had been expressly informed by management that free bread and pastries in the auditorium were for residents only, and staff was not permitted to take items from the auditorium.  Defendant's SMF ¶ 24; Paradis Aff. ¶ 7.[34]  On April 29, 2008, LaCourse took bread items from the table in the auditorium.  Defendant's SMF ¶ 25; Paradis Aff. ¶ 8.[35]

### C.  Settlement of MHRC Complaint

On May 30, 2008, LaCourse signed a Settlement Agreement and Release of Claims between himself and HallKeen relating to his charge of age discrimination with the MHRC. Defendant's SMF ¶ 26; Plaintiff's Opposing SMF ¶ 26.[36]  He was assisted by counsel in the execution of the agreement and throughout his MHRC case.  *Id.* ¶ 27.

Paragraph 2.2 of the Settlement Agreement states that LaCourse "agrees and acknowledges that his schedule will remain at thirty (30) hours per week absent a mutual agreement by the Parties for any change."  *Id.* ¶ 28.  LaCourse understood that his hours would remain at 30 per week unless the parties mutually agreed to change that number.  *Id.* ¶ 29.[37]  In his answers to HallKeen's interrogatories in this case, LaCourse complains that his hours were not restored to 40 per week.  *Id.* ¶ 30.

---

[33] My recitation incorporates, in part, HallKeen's qualification.
[34] LaCourse denies that HallKeen had a policy prohibiting staff from taking leftover bread and pastries that otherwise would have been thrown away, asserting that the individual who donated the bread gave him permission to take it, if it otherwise would have been thrown away.  Plaintiff's Opposing SMF ¶ 24; LaCourse Dep. at 39-40.
[35] I omit LaCourse's response to this statement, Plaintiff's Opposing SMF ¶ 25, which is not supported by the citation given.
[36] My recitation incorporates LaCourse's qualification.
[37] My recitation incorporates LaCourse's qualification, which is mischaracterized as a denial.

Paragraph 2.3 of the Settlement Agreement states that HallKeen "agrees and acknowledges that a cell phone will be arranged for LaCourse to have use of when he is required to be on-call on weekends." *Id.* ¶ 31. LaCourse understood that he would have a cell phone on the weekends that he was on call. *Id.* ¶ 32. In his answers to HallKeen's interrogatories in this case, LaCourse complains that HallKeen took his cell phone except for weekends. *Id.* ¶ 33.

Paragraph 3.0 of the Settlement Agreement prohibits LaCourse from discussing or disclosing his MHRC charge or the terms of the settlement with anyone apart from his spouse. *Id.* ¶ 34.[38] The Settlement Agreement contains a release of all claims known or unknown as of the date of the agreement. *Id.* ¶ 35. LaCourse is bound by the terms of the release. *Id.* ¶ 36.

### D. Post-Settlement Events

On July 22, 2008, as LaCourse worked painting an apartment, Paradis allegedly called him on his radio. Plaintiff's Additional SMF ¶ 42; Defendant's Reply SMF ¶ 42. Two weeks earlier, Paradis had told Mike Cleveland that the radios were no good. Plaintiff's Additional SMF ¶ 42; LaCourse Dep. at 43-44.[39] In LaCourse's view, the radios were old, and new ones should have been purchased years ago. Plaintiff's Additional SMF ¶ 43; LaCourse Dep. at 43-44.[40] Russ Johnson, Paradis' supervisor, came into the apartment. Plaintiff's Additional SMF ¶ 44; LaCourse Dep. at 43-44. LaCourse testified that "Russ came in and screaming at me, and

---

[38] My recitation incorporates LaCourse's qualification, which is mischaracterized as a denial.

[39] HallKeen denies this, Defendant's Reply SMF ¶ 42; however, I view the evidence in the light most favorable to LaCourse, as nonmovant. I omit LaCourse's further statement that "[t]he radios often did not provide service," Plaintiff's Additional SMF ¶ 42, which is neither admitted nor supported by the citation given.

[40] HallKeen's objection to this statement on the basis that it represents a subjective personal opinion, rather than a fact, Defendant's Reply SMF ¶ 43, is overruled. HallKeen offers no reason to doubt that LaCourse, a longtime maintenance technician, had reason to know from personal experience whether the radios worked. A lay witness can offer admissible opinion testimony when, *inter alia*, his or her opinion is "rationally based on [his or her] perception[.]" Fed. R. Evid. 702. HallKeen alternatively denies the statement, *id.*; however, I view the evidence in the light most favorable to LaCourse, as nonmovant. HallKeen also qualifies the statement, asserting that, on July 22, 2008, LaCourse signed a memorandum stating, in part: "It is my responsibility to assure my communication equipment is working properly and has charged batteries at all times." Defendant's Reply SMF ¶ 43; Exh. 5 (Docket No. 12-8) to Paradis Aff.

stood there looking down on me, and I'll write you up in black, he says. I mean actually screaming at me." *Id*. Johnson claimed that the radio had been on the wrong channel. Plaintiff's Additional SMF ¶ 45; LaCourse Dep. at 45.[41]

On July 22, 2008, LaCourse received a verbal warning about not responding to calls and signed a statement acknowledging the importance of maintenance staff being accessible by radio and/or pager while on duty. Defendant's SMF ¶ 37 Paradis Aff. ¶ 9.[42] The statement indicated that LaCourse understood that "failure to respond to radio calls and/or failure to respond to pages on call will result in a written warning." Plaintiff's Additional SMF ¶ 47; Defendant's Reply SMF ¶ 47.[43] The allegation of failing to respond to pages was false, as LaCourse always answered his pages. Plaintiff's Additional SMF ¶ 48; LaCourse Dep. at 38.[44]

On October 8, 2008, LaCourse removed personal property items, including a television, from a former resident's apartment that he was painting and cleaning. Defendant's SMF ¶ 39; LaCourse Dep. at 49; Paradis Aff. ¶ 10.[45] LaCourse did not have permission to remove the items. Defendant's SMF ¶ 40; LaCourse Dep. at 49, 52.[46] LaCourse returned the television the next day. Defendant's SMF ¶ 41; Plaintiff's Opposing SMF ¶ 41.

On October 10, 2008, Paradis requested that LaCourse be fired. Plaintiff's Additional SMF ¶ 49; Defendant's Reply SMF ¶ 49. Paradis cited four alleged violations of company

---

[41] I omit the balance of paragraph 45 as well as paragraph 46, Plaintiff's Additional SMF ¶¶ 45-46, sustaining HallKeen's objections that they are not supported by the citations given, Defendant's Reply SMF ¶¶ 45-46.

[42] LaCourse denies that he did not respond to calls by radio and/or pager. Plaintiff's Opposing SMF ¶ 37; LaCourse Dep. at 38.

[43] My recitation incorporates HallKeen's qualification. *See also* Exh. 5 to Paradis Aff.

[44] HallKeen denies this, Defendant's Reply SMF ¶ 48; however, I view the evidence in the light most favorable to LaCourse, as nonmovant.

[45] LaCourse purports to deny this statement, Plaintiff's Opposing SMF ¶ 39, but his denial is in the nature of a qualification: that he took a television abandoned by a former tenant with the intention of giving it to his brother and immediately brought it back when told to do so, LaCourse Dep. at 50-51; LaCourse Aff. ¶ 13.

[46] LaCourse purports to deny this statement, Plaintiff's Opposing SMF ¶ 40, but his denial is in the nature of a qualification. He asserts, in cognizable part, that HallKeen did not have a policy prohibiting the maintenance staff form removing former tenants' abandoned property. *Id*.; LaCourse Dep. at 49; LaCourse Aff. ¶ 13.

policy. *Id*.[47] She first accused LaCourse of entering her office when her office was closed. *Id*. ¶ 50. The allegation was false. Plaintiff's Additional SMF ¶ 50; LaCourse Aff. ¶ 12.[48] She next accused LaCourse of continuing to take bread or sweets that were delivered to the residents. Plaintiff's Additional SMF ¶ 51; Defendant's Reply SMF ¶ 51.[49]

Third, Paradis warned LaCourse that he was not permitted to remove personal property owned by a current or past resident. Plaintiff's Additional SMF ¶ 52; Defendant's Reply SMF ¶ 52.[50] Maintenance and staff often took abandoned property before it was thrown away. Plaintiff's Additional SMF ¶ 54; LaCourse Aff. ¶ 13.[51] HallKeen did not have any policy against employees taking abandoned property. Plaintiff's Additional SMF ¶ 55; LaCourse Aff. ¶ 13.[52] The television had been abandoned by the tenant, so consistent with company policy, LaCourse took the abandoned television home to give to his brother. Plaintiff's Additional SMF ¶ 56; LaCourse Aff. ¶ 13.[53]

HallKeen management rejected Paradis' request to terminate LaCourse at that time. Plaintiff's Additional SMF ¶ 57; Defendant's Reply SMF ¶ 57. On October 14, 2008, LaCourse received a final written warning accusing him of five policy violations. *Id*. ¶ 58. LaCourse signed and acknowledged the warning. Defendant's SMF ¶ 42; Paradis Aff. ¶ 11.[54]

---

[47] LaCourse sets forth only three of the four cited violations. Plaintiff's Additional SMF ¶¶ 49-57.
[48] HallKeen denies this, but neglects to supply a record citation in support of its denial. Defendant's Reply SMF ¶ 50. In any event, I view the evidence in the light most favorable to LaCourse, as nonmovant.
[49] I omit the final two sentences of paragraph 51, Plaintiff's Additional SMF ¶ 51, which are neither admitted nor supported by the citation given.
[50] My recitation incorporates HallKeen's qualification.
[51] HallKeen purports to qualify this statement, Defendant's Reply SMF ¶ 54; however, its qualification controverts the statement, and I view the evidence in the light most favorable to LaCourse, as nonmovant.
[52] HallKeen denies this statement, Defendant's Reply SMF ¶ 55; however, I view the evidence in the light most favorable to LaCourse, as nonmovant.
[53] HallKeen denies this statement, Defendant's Reply SMF ¶ 56; however, I view the evidence in the light most favorable to LaCourse, as nonmovant.
[54] LaCourse does not controvert this portion of paragraph 42. Plaintiff's Opposing SMF ¶ 42.

First, Paradis accused him of continuing to take bread or sweets that were delivered to the residents. Plaintiff's Additional SMF ¶ 59; Defendant's Reply SMF ¶ 59.[55]

Second, Paradis accused LaCourse of having discussed his legal case or settlement with residents, vendors, or co-workers. Plaintiff's Additional SMF ¶ 61; Defendant's Reply SMF ¶ 61. LaCourse told Gary "Mike" Cleveland about the settlement. Defendant's SMF ¶ 43; LaCourse Dep. at 54.[56] LaCourse only told Cleveland of some sort of settlement. Plaintiff's Additional SMF ¶ 62; LaCourse Dep. at 53-54. Other than that, he did not discuss the settlement with anyone at work or with residents. Plaintiff's Additional SMF ¶ 62; LaCourse Dep. at 75.[57] LaCourse knew that he was not supposed to tell Cleveland about the settlement. Defendant's SMF ¶ 44; LaCourse Dep. at 54.[58]

Third, Paradis made a general statement that "comments about co-worker or company issues will not be tolerated and focus should be kept on business needs." Plaintiff's Additional SMF ¶ 63; Defendant's Reply SMF ¶ 63. Paradis' affidavit describing the October 14, 2008, written warning does not explain the basis for, or even reference, that comment. *Id*. ¶ 64.[59]

Fourth, Paradis accused LaCourse of taking "personal property belonging to a current or past residents." *Id*. ¶ 65. LaCourse never took personal property belonging to (*versus* abandoned by) a current or past resident. Plaintiff's Additional SMF ¶ 66; LaCourse Aff. ¶ 13.[60]

---

[55] I omit paragraph 60, Plaintiff's Additional SMF ¶ 60, which is neither admitted nor supported by the citation given.
[56] LaCourse purports to deny this statement, Plaintiff's Opposing SMF ¶ 43; however, his denial is in the nature of a qualification, the substance of which is set forth elsewhere in this recitation.
[57] HallKeen denies this statement, Defendant's Reply SMF ¶ 62; however, I view the evidence in the light most favorable to LaCourse, as nonmovant.
[58] I omit LaCourse's response to this statement, Plaintiff's Opposing SMF ¶ 44, which is not supported by the citation given.
[59] I omit HallKeen's response to this statement, Defendant's Reply SMF ¶ 64, which is not supported by the citation given.
[60] HallKeen denies this, Defendant's Reply SMF ¶ 66; however, I view the evidence in the light most favorable to LaCourse, as nonmovant.

Fifth, Paradis accused LaCourse of violating the requirement to respond to radio calls or pages. Plaintiff's Additional SMF ¶ 67; Defendant's Reply SMF ¶ 67. LaCourse never failed to respond to a page that he received. Plaintiff's Additional SMF ¶ 68; LaCourse Dep. at 38.[61]

On October 23, 2008, LaCourse received a written warning for allegedly harassing and creating a hostile work environment for Mike Cleveland. Plaintiff's Additional SMF ¶ 69; Defendant's Reply SMF ¶ 69. Paradis directed that LaCourse immediately stop the harassment of Cleveland or any other co-worker. Defendant's SMF ¶ 45; Paradis Aff. ¶ 12.[62] LaCourse refused to sign and acknowledge the second written warning. Defendant's SMF ¶ 46; Plaintiff's Opposing SMF ¶ 46. Cleveland testified that he got along "pretty good" with LaCourse and, when asked if he had any issues with him, responded, "Not really. I don't think so." Plaintiff's Additional SMF ¶ 70; Deposition of Gary M. Cleveland, Jr. ("Cleveland Dep.") (Docket No. 26-6), Exh. F to Defendant's Reply SMF, at 12.[63]

On March 24, 2009, LaCourse received his annual evaluation. Plaintiff's Additional SMF ¶ 71; Defendant's Reply SMF ¶ 71.[64] On April 1, 2009, LaCourse received a two percent raise, which was consistent with those given to other maintenance personnel. Defendant's SMF ¶ 47; Paradis Aff. ¶ 13.[65]

LaCourse was on call the night of August 29, 2009. Defendant's SMF ¶ 50; Plaintiff's Opposing SMF ¶ 50. At approximately 11:45 p.m., his pager went off. *Id.* ¶ 51. In response,

---

[61] HallKeen denies this, Defendant's Reply SMF ¶ 68; however, I view the evidence in the light most favorable to LaCourse, as nonmovant.

[62] LaCourse denies that he harassed Cleveland but does not controvert that Paradis issued the stated directive. Plaintiff's Opposing SMF ¶ 45.

[63] HallKeen denies this, Defendant's Reply SMF ¶ 70; however, I view the evidence in the light most favorable to LaCourse, as nonmovant.

[64] I omit the remainder of paragraph 71, Plaintiff's Additional SMF ¶ 71, which is neither admitted nor supported by the citation given.

[65] LaCourse's objection that HallKeen fails to establish an evidentiary basis or proper foundation for its statement that his raise was consistent with those of other maintenance personnel, Plaintiff's Opposing SMF ¶ 47, is overruled. The statement is contained in the affidavit of Paradis, who was the property manager and LaCourse's supervisor at the time. Paradis Aff. ¶¶ 1-2.

LaCourse's wife, as was their practice because of LaCourse's hearing problems, called the answering service. Plaintiff's Additional SMF ¶ 94; Defendant's Reply SMF ¶ 94. LaCourse's wife took tenant Helen Jenkins' phone number and gave it to LaCourse. *Id*. ¶¶ 94-95.

LaCourse called Jenkins, who told him that her smoke alarm was beeping. *Id*. ¶ 95.[66] LaCourse offered to come in, but explained to Jenkins that it would take him about three-quarters of an hour to get there. Plaintiff's Additional SMF ¶ 96; LaCourse Dep. at 79-80.[67] LaCourse told Jenkins that he would have another tenant, Phil Bouchard, go up and respond to her call. Plaintiff's Additional SMF ¶ 97; LaCourse Dep. at 112. Jenkins knew Bouchard "better than a mother and father. They [were] together all the time at night in the laundry room talking, hours and things. All the time. That was their thing, the two of them." *Id*.[68] Bouchard also had experience in maintenance, and "he takes care of two or three buildings himself, maintenance." Plaintiff's Additional SMF ¶ 98; LaCourse Dep. at 111-12.[69] Jenkins was very happy to have Bouchard respond because "she thought the world of Phil, the world of Phil, the world of him." Plaintiff's Additional SMF ¶ 99; Defendant's Reply SMF ¶ 99.[70]

LaCourse therefore called Bouchard, who agreed to go over. *Id*. ¶ 100. LaCourse asked Bouchard to call him if the detector required anything beyond a battery, so that LaCourse could come in. *Id*. It took Bouchard less than five minutes to respond, because he just needed to go up the elevator to the fourth floor. *Id*. ¶ 73. The smoke detector was just beeping when Bouchard

---

[66] I omit the third sentence of paragraph 95, Plaintiff's Additional SMF ¶ 95, which is neither admitted nor supported by the citation given, as well as the fourth sentence, *id*., with respect to which I sustain HallKeen's objection that there is no foundation for LaCourse's opinion that a beeping detector is not an emergency, Defendant's Reply SMF ¶ 95.

[67] HallKeen denies this, Defendant's Reply SMF ¶ 96; however, I view the evidence in the light most favorable to LaCourse, as nonmovant.

[68] I omit the first sentence of paragraph 97, Plaintiff's Additional SMF ¶ 97, sustaining HallKeen's objection that it is not supported by the citation given, Defendant's Reply SMF ¶ 97.

[69] HallKeen denies this, Defendant's Reply SMF ¶ 98; however, I view the evidence in the light most favorable to LaCourse, as nonmovant.

[70] I omit the first sentence of paragraph 99, Plaintiff's Additional SMF ¶ 99, which is neither admitted nor supported by the citation given.

arrived.  *Id.* ¶ 74.  He described it as "not a big deal."  *Id.*  Bouchard replaced the battery, which stopped the noise.  *Id.* ¶ 75.  He stayed for about 10 minutes and then phoned LaCourse to report that everything was fine.  *Id.* ¶¶ 75-76.  LaCourse thanked Bouchard, said good night, and hung up.  *Id.* ¶ 100.  He did not hear anything more regarding the detector until the following Monday. *Id.*

About 15 minutes after Bouchard replaced the battery, Jenkins called him to tell him that the smoke detector was beeping again.  Defendant's SMF ¶ 60; Plaintiff's Opposing SMF ¶ 60. Bouchard was surprised.  Plaintiff's Additional SMF ¶ 77; Defendant's Reply SMF ¶ 77.  He thought the smoke detector needed to be replaced.  Defendant's SMF ¶ 61; Plaintiff's Opposing SMF ¶ 61.  He returned to Jenkins' apartment and told her that he would take the detector off, unplug it, take the battery out, and put it on the table so that she would not hear anything. Plaintiff's Additional AMF ¶ 79; Defendant's Reply SMF ¶ 79.  Jenkins wanted Bouchard to disable the unit so that it would stop making noise.  *Id.* ¶ 80.  Bouchard testified, "she wanted, you know, she just wanted a quiet sleep and she didn't want her cat running around the place." *Id.* ¶ 86.  Bouchard did not call LaCourse that night to report that he had to go back a second time.  *Id.* ¶ 81.  He felt that, if Jenkins considered this unsafe, she would have called LaCourse, as she had done originally.  *Id.* ¶ 82.[71]

When Bouchard left Jenkins' apartment, the smoke detector was inoperative. Defendants' SMF ¶ 63; Plaintiff's Opposing SMF ¶ 63.  Bouchard did not have the ability to replace the unit on the night of April 29, 2009.  *Id.* ¶ 64.  Spare smoke alarms are stored in the maintenance room so that maintenance technicians can replace inoperative smoke detectors, if

---

[71] I omit paragraphs 83 and 84, Plaintiff's Additional SMF ¶¶ 83-84, sustaining HallKeen's objection that there is no foundation for Bouchard's opinion that the disabling of the smoke detector did not present any safety risks because there were other detectors in the building, Defendant's SMF ¶¶ 83-84.

necessary. *Id*. ¶ 65. Maintenance staff have access to the maintenance room in Jenkins' building. *Id*. ¶ 66. LaCourse would have been able to replace the smoke detector with a replacement unit in the maintenance room. *Id*. ¶ 67. Residents, including Bouchard, did not have access to the maintenance room. *Id*. ¶ 68.

During daylight hours that Sunday, Bouchard met Jenkins in the yard and talked with her outside. Plaintiff's Additional SMF ¶ 88; Defendant's Reply SMF ¶ 88. She did not mention anything about any problem with the smoke detector. *Id*. The next day, Bouchard again spoke to Jenkins, who told him that a maintenance man, Mike Moody, had fixed the smoke detector. *Id*. ¶ 89.[72] Jenkins told Bouchard that it was all set, but that there was a red light still on. *Id*. ¶ 90. Bouchard responded that Moody had not armed the detector. *Id*. He went back upstairs and turned on the circuit breaker that arms the smoke detector, putting the green light back on. *Id*.

On Monday morning following the Jenkins call, Barakat asked LaCourse how the weekend went. Plaintiff's Additional SMF ¶ 102; LaCourse Dep. at 82. LaCourse mentioned Jenkins' call. *Id*. Barakat responded that "you should have called Phil [Bouchard]." *Id*. LaCourse said that he did. *Id*. Barakat responded, "good, that's what I do." *Id*.[73] Barakat agreed with LaCourse's action. Plaintiff's Additional SMF ¶ 103; LaCourse Dep. at 111. In fact, he told LaCourse that in the past he had called Bouchard to respond to a tenant's call. *Id*.[74]

When Moody saw Jenkins on Monday morning, she was visibly upset and sobbing. Defendant's SMF ¶ 80; Deposition of Michael J. Moody ("Moody Dep.") (Docket No. 26-7),

---

[72] HallKeen's objection on hearsay grounds, Defendant's Reply SMF ¶ 89, is overruled. The statement seemingly is not offered for the truth of the matter asserted (that Moody fixed the smoke detector) but rather to show that Jenkins spoke to Bouchard about that matter.
[73] HallKeen denies paragraph 102, Defendant's Reply SMF ¶ 102; however, I view the evidence in the light most favorable to LaCourse, as nonmovant.
[74] HallKeen denies paragraph 103, Defendant's Reply SMF ¶ 103; however, I view the evidence in the light most favorable to LaCourse, as nonmovant.

Exh. G to Defendant's Reply SMF, at 10-11.[75] Jenkins told Moody that LaCourse had refused to come to the property on Saturday night. Defendant's SMF ¶ 81; Moody Dep. at 11.[76] Jenkins told Moody that Bouchard had attempted to fix the smoke detector but was unable to do the job. Defendant's SMF ¶ 82; Moody Dep. at 11-12. Replacing the smoke detector took approximately 15 minutes. Defendant's SMF ¶ 83; Plaintiff's Opposing SMF ¶ 83.

Moody told Barakat that LaCourse had failed to respond to Jenkins' call on August 29, 2009. Id. ¶ 84.[77] Barakat reported the incident to Paradis, the property manager. Defendant's SMF ¶ 85; Barakat Dep. at 8.[78] On August 31, 2009, following an investigation into the incident with Jenkins, Paradis informed Kathleen Wilbur, Director of Human Resources, that LaCourse had failed to meet his duties to respond to the property. Defendant's SMF ¶ 86; Paradis Aff. ¶ 18.[79] The company did not speak to LaCourse, Moody, Barakat, or Bouchard regarding the Jenkins call. Plaintiff's Additional SMF ¶ 111; LaCourse Dep. at 83-84; Moody Dep. at 25-26; Barakat Dep. at 14; Deposition of Philip Bouchard ("Bouchard Dep.") (Docket No. 26-8), Exh. H to Defendant's Reply SMF, at 33.[80]

---

[75] LaCourse purports to deny this statement, Plaintiff's Opposing SMF ¶ 80, but his assertions, which concern how Jenkins appeared to Bouchard the prior day, do not controvert it.

[76] LaCourse does not controvert that Jenkins made the report to Moody, but denies that it is true. Plaintiff's Opposing SMF ¶ 81. The substance of his assertions is set forth elsewhere in this recitation of facts.

[77] LaCourse qualifies this statement, asserting that Barakat knew as of that time that LaCourse had responded by calling upon Bouchard and had indicated to LaCourse that he had done the right thing. Plaintiff's Opposing SMF ¶ 84. The substance of these assertions is set forth elsewhere in this recitation of facts.

[78] I omit HallKeen's further assertion that Barakat made that report "because it was a liability issue to ask another tenant to perform maintenance duties[,]" Defendant's SMF ¶ 85, LaCourse having controverted that portion of the statement, Plaintiff's Opposing SMF ¶ 85; LaCourse Dep. at 82, 111.

[79] LaCourse purports to deny that any investigation was undertaken, noting that the company failed to speak to a number of individuals, Plaintiff's Opposing SMF ¶ 86; however, his assertions, which are set forth elsewhere in this recitation of facts, go to the quality of the investigation rather than its existence. LaCourse denies that he failed to meet his duties. Id. The substance of that assertion also is set forth elsewhere in this recitation of facts.

[80] I omit LaCourse's assertion that HallKeen did not speak to Jenkins, Plaintiff's Additional SMF ¶ 111, which is neither admitted nor supported by the citations given. I also omit the first two sentences of paragraph 111, id., sustaining HallKeen's objection that they are not supported by any record citation, as required by Local Rule 56(c), Defendant's Reply SMF ¶ 111.

On September 3, 2009, Wilbur made the decision to terminate LaCourse because he failed to meet his job requirements that he respond to a resident's call while he was on duty on August 29, 2009. Defendant's SMF ¶ 87; Affidavit of Kathleen Wilbur ("Wilbur Aff.") (Docket No. 12-19), Exh. G to Defendant's SMF, ¶ 4.[81] On September 4, 2009, LaCourse received a letter informing him of the decision to terminate his employment. Defendant's SMF ¶ 88; Plaintiff's Opposing SMF ¶ 88.[82]

LaCourse's failure to report to the property or rectify the smoke detector problem in Jenkins' apartment presented a significant safety issue. Defendant's SMF ¶ 89; Wilbur Aff. ¶ 6.[83]

LaCourse knew that Bouchard was not a HallKeen employee. Defendant's SMF ¶ 54; Plaintiff's Opposing SMF ¶ 54. LaCourse had never asked Bouchard to do any maintenance tasks before the night of August 29, 2009. *Id*. ¶ 55.

Prior to LaCourse's termination, Barakat never had a discussion with him about not responding to calls about smoke detectors. Plaintiff's Additional SMF ¶ 92; Defendant's Reply SMF ¶ 92.[84] When asked if HallKeen had a policy with regard to responding to calls such as that of Jenkins, Barakat testified that he did not know if HallKeen had any such policy, and he never

---

[81] LaCourse denies that he failed to meet the job requirement to respond to a resident's call while on duty. Plaintiff's Opposing SMF ¶ 87. The substance of his assertions is set forth elsewhere in this recitation of facts.

[82] I omit paragraph 109 of the plaintiff's statement of additional facts, Plaintiff's Additional SMF ¶ 109, sustaining HallKeen's objection that LaCourse's statement describing the contents of HallKeen's MHRC submission are hearsay, in that they are offered for the truth of the matter asserted, and LaCourse fails to put the MHRC document itself into evidence, Defendant's Reply SMF ¶ 109; Fed. R. Evid. 801(c), 1002. I also omit paragraph 110, Plaintiff's Additional SMF ¶ 110, sustaining HallKeen's objection that it is not supported by the citation given, Defendant's Reply SMF ¶ 110.

[83] LaCourse purports to deny this statement, Plaintiff's Opposing SMF ¶ 89; however, his first assertion, that he did not know that Bouchard disabled the smoke detector and did not ask Bouchard to do so, does not controvert the statement, and his second assertion rests on testimony of Bouchard with respect to which I have sustained an objection by HallKeen regarding Bouchard's competence to render the opinion in question.

[84] I omit paragraph 91, Plaintiff's Additional SMF ¶ 91, sustaining HallKeen's objection that it is not supported by the citation given, Defendant's Reply SMF ¶ 91. Barakat did not testify that HallKeen had no policy or practice on how employees should respond to calls concerning smoke detectors, but rather that he did not know whether it did. Barakat Dep. at 29.

discussed with LaCourse how to respond to calls about smoke detectors. Plaintiff's Additional SMF ¶ 101; Barakat Dep. at 29-30.[85]

The company has a policy requiring a response to calls involving safety within 30 minutes. Plaintiff's Additional SMF ¶ 93; Moody Dep. at 17-18.[86] A beeping smoke detector in an apartment unit presents a significant safety issue because it increases the likelihood that the tenant will disable the smoke detector or render it inoperative. Defendant's SMF ¶ 73; Affidavit of David A. Dodge ("Dodge Aff.") (Docket No. 12-14), Exh. F thereto, ¶ 11.[87]

LaCourse's failure to report to the property in response to Jenkins' call did not save HallKeen money. Defendant's SMF ¶ 75; Plaintiff's Opposing SMF ¶ 75. HallKeen pays its on-call maintenance technician for four hours of work regardless of whether there are any calls during the on-call period. *Id.* LaCourse was paid for four hours of on-call work for the weekend of August 29, 2009. *Id.* ¶ 76. LaCourse admits that he would not have incurred overtime beyond the four hours if he had reported to the property on August 29, 2009, unless he had to go on another call that same weekend. *Id.* ¶ 77. LaCourse estimates that he could have come to Portland, repaired the smoke detector, and returned home in less than two hours. *Id.* ¶ 78.

---

[85] I omit the first sentence of paragraph 101, Plaintiff's Additional SMF ¶ 101, sustaining HallKeen's objection that it is not supported by the citation given, Defendant's Reply SMF ¶ 101. I overrule that objection with respect to the second two sentences. HallKeen alternatively denies those statements, id.; however, I view the evidence in the light most favorable to LaCourse, as nonmovant.

[86] I sustain, in part, HallKeen's objection that this statement is not supported by the citation given, Defendant's Reply SMF ¶ 93, to the extent that I have omitted LaCourse's description of the required response as "personal," Plaintiff's Additional SMF ¶ 93. I also omit paragraphs 104 and 105, Plaintiff's Additional SMF ¶¶ 104-05, sustaining HallKeen's objection that they are not supported by the citations given, Defendant's Reply SMF ¶¶ 104-05.

[87] LaCourse's objection that this statement is without foundation, speculative, and irrelevant, Plaintiff's Opposing SMF ¶ 73, is overruled. Affiant David A. Dodge, the owner of Safety and Forensic Consulting in Buxton, Maine, and a Certified Safety Professional, is competent to render the opinion expressed, which is not speculative but rather based on analysis of applicable safety codes and laws. *See generally* Dodge Aff. The opinion is relevant to HallKeen's motivation in terminating LaCourse's employment. I omit paragraphs 107 and 108 of the plaintiff's statement of additional facts, Plaintiff's Additional SMF ¶¶ 107-08, sustaining HallKeen's objection that LaCourse lays no foundation for his competence to testify regarding the circumstances in which malfunctioning smoke detectors present life safety issues, Defendant's Reply SMF ¶¶ 107-08.

## III. Discussion

In his complaint, LaCourse alleges that HallKeen took adverse employment actions against him in retaliation for his filing of his MHRC complaint both before and after the settlement of that matter. *See* Complaint ¶¶ 7-15. Those alleged adverse actions include, in addition to the ultimate termination of his employment, "refusing to speak to [him], chastising [him] in front of others, excluding [him] from employee gatherings, assigning [him] less favorable duties, warning [him] that he was being watched, denying [him] raises given to other employees, forcing [him] to work during his vacation, and disciplining [him]." *Id.* ¶ 9.

### A. The Elements of an MWPA Case

The MWPA provides, in relevant part:

> **1. Discrimination prohibited.** No employer may discharge, threaten or otherwise discriminate against an employee regarding the employee's compensation, terms, conditions, location or privileges of employment because:
>
> > **A.** The employee, acting in good faith, or a person acting on behalf of the employee, reports orally or in writing to the employer or a public body what the employee has reasonable cause to believe is a violation of a law or rule adopted under the laws of this State, a political subdivision of this State or the United States[.]

26 M.R.S.A. § 833.

"The MWPA prohibits an employer from taking adverse action against an employee who reports a suspected violation of a law or rule." *LePage v. Bath Iron Works Corp.*, 2006 ME 130, ¶ 19, 909 A.2d 629, 635. "Although the MWPA provides no private right of action, plaintiffs may file a civil action under the MHRA [Maine Human Rights Act]." *Osher v. University of Me. Sys.*, 703 F. Supp.2d 51, 64 n.13 (D. Me. 2010).

"To establish a *prima facie* case of unlawful retaliation under state and federal law, [a plaintiff] must show that (1) she engaged in an activity protected by the applicable statute;

(2) she suffered an adverse employment action; and, (3) the adverse employment action was causally connected to the protected activity." *Id*. at 65. "The burden of making out a *prima facie* case is not onerous." *Daigle v. Stulc*, No. 1:09-cv-00353-JAW, 2011 WL 2551572, at *28 (D. Me. June 27, 2011) (citations and internal quotation marks omitted).

"Following the shifting burdens analysis described in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S. Ct. 1817, 36 L.Ed.2d 668 (1973), once the plaintiff has shown a protected activity followed in close proximity by an adverse employment action, this gives rise to an inference that a causal connection is established; the employer, then, will be required to produce some probative evidence to demonstrate a nondiscriminatory reason for the adverse employment action." *LePage*, 2006 ME 130, ¶ 19, 909 A.2d at 636 (citations and internal punctuation omitted). "The final burden to prove the existence of the causal nexus remains with the plaintiff." *Id*. "[U]nder First Circuit authority, the Court may not consider the employer's alleged nondiscriminatory reason for taking an adverse employment action when analyzing the *prima facie* case." *Daigle*, 2011 WL 2551572, at *28 (citations and internal quotation marks omitted).[88]

### B. The Parties' Positions

HallKeen seeks summary judgment on the grounds that (i) LaCourse is barred by the Settlement Agreement from making any MWPA claim for events occurring prior to May 30, 2008, the date of the settlement, (ii) LaCourse fails to make a *prima facie* showing of any causal link between the filing of his MHRC complaint and his termination, (iii) HallKeen articulates a nonretaliatory basis for his termination, and (iv) LaCourse makes an insufficient showing that HallKeen's stated reason for the termination was pretextual. *See* Motion at 8-17.

---

[88] "The MWPA analysis is guided by federal case law construing analogous statutes." *Halkett v. Correctional Med. Servs.*, *Inc.*, 763 F. Supp.2d 205, 220 (D. Me. 2011).

LaCourse does not dispute that he cannot recover damages for any retaliatory acts predating the Settlement Agreement. *See* Plaintiff's Memor[]andum of Law and Opposition to Defendant's Summary Judgment ("Opposition") (Docket No. 21) at 12. However, he argues that evidence of events predating the Settlement Agreement is admissible and relevant for purposes of establishing "a continuous timeline of retaliatory events." *Id*. He contends that (i) he readily establishes a *prima facie* case of retaliation by showing a series of retaliatory actions commencing less than one month after the filing of his MHRC complaint, and (ii) HallKeen ignores the totality of the retaliatory actions at issue, including the annual pay raise issue, more arduous job assignments, ostracism, unwarranted reprimands, extreme supervision, and the creation of rules designed for LaCourse alone. *See id*. at 12-14.

LaCourse acknowledges that HallKeen satisfies its burden of articulating a legitimate, nonretaliatory reason for his termination. *See id*. at 17. However, he argues that HallKeen fails to articulate any legitimate reason for the other actions of which he complains, preventing summary judgment in its favor. *See id*. at 17. He contends that he adduces sufficient evidence to demonstrate that the stated reason for his termination was pretextual. *See id*. at 17-20.

HallKeen rejoins that LaCourse simply repackages his 2006 and 2007 allegations of age discrimination in an effort to cross the *prima facie* causation hurdle, with 29 months having elapsed between the filing of his MHRC complaint and his termination, and 14 months having elapsed between the settlement of those earlier grievances and his termination. *See* Defendant's Reply to Plaintiff'[s] Memorandum of Law in Opposition to Motion for Summary Judgment ("Reply") (Docket No. 25) at 1-3. HallKeen argues that, to the extent that the pre-settlement incidents constitute relevant evidence, the attenuated timeframe between them and LaCourse's termination, together with the circumstances surrounding the termination, greatly reduce their

relevance in connection with LaCourse's efforts to prove causation. *See id*. at 2. HallKeen finally argues that LaCourse falls short in showing that the termination decision was pretextual, relying on mischaracterizations and simplifications of the record. *See id*. at 3-7.

For the reasons that follow, I conclude that HallKeen falls short of demonstrating its entitlement to summary judgment on LaCourse's MWPA claim.

## C. Analysis

### 1. Employee's *Prima Facie* Case Under MWPA

#### a. First Prong: Protected Activity

There is no dispute that LaCourse satisfies the first prong of an MWPA *prima facie* case. HallKeen acknowledges that the filing of a charge of age discrimination with the MHRC constituted protected activity under the MHRA and the MWPA. *See* Motion at 11 n.2.

#### b. Second Prong: Adverse Employment Action

HallKeen does not dispute that LaCourse satisfies the second prong of an MWPA *prima facie* case insofar as he complains that his employment was terminated. *See* Motion at 11 n.2. However, LaCourse argues that HallKeen ignores the full spectrum of adverse actions of which he complains, including (i) the denial of his annual pay raise, (ii) more arduous job assignments, (iii) ostracism, (iv) unwarranted reprimands, (v) extreme supervision, and (vi) the creation of rules designed for him. *See* Opposition at 13-14. HallKeen contends that, apart from LaCourse's termination, the only incidents postdating the Settlement Agreement were the 2008 warnings, which it argues did not result in any adverse employment action and, in any event, were based on legitimate concerns, even if one credits LaCourse's version of events. *See* Motion at 14; Reply at 6-7.

Certain of the allegedly retaliatory actions of which LaCourse complains are not

actionable for the simple reason that he adduces no evidence that they occurred, or continued, post-settlement. He identifies (i) only one instance of denial of an annual pay raise, in March 2007, *see* Plaintiff's Additional SMF ¶ 7; LaCourse Aff. ¶ 9 & Exh. 8 thereto, and (ii) one instance, in March 2008, of the creation of a rule designed for him, a prohibition against parking in tenant parking spaces, *see* Plaintiff's Additional SMF ¶ 29; LaCourse Aff. ¶ 11. These complained-of actions predated and are subsumed in the Settlement Agreement and, hence, cannot serve as actionable adverse employment actions in this case. He identifies three arguable incidents of "extreme supervision": the frequent changing of his schedule, Plaintiff's Additional SMF ¶ 22; LaCourse Aff. ¶ 10, the tracking of his every location at work, Plaintiff's Additional SMF ¶ 25; LaCourse Aff. ¶ 10, and the propensity of supervisor Russ Johnson to yell at him but not at others, Plaintiff's Additional SMF ¶ 26; LaCourse Aff. ¶ 10. Yet, he neither provides specific dates on which that conduct occurred nor makes clear that it continued post-settlement. *See id.* Thus, he falls short of demonstrating that this category of alleged adverse actions is actionable. As HallKeen points out, *see* Motion at 10, to the extent that LaCourse complains of the provision of a cell phone only on weekends and the failure to reinstate him to a 40-hour workweek, *see* Plaintiff's Additional SMF ¶¶ 27-28; LaCourse Aff. ¶ 10, those matters clearly were subsumed in the Settlement Agreement, *see* Defendant's Reply SMF ¶¶ 27-28; Settlement Agreement §§ 2.2, 2.3.

Nonetheless, LaCourse does adduce evidence that ostracism and the assignment of more arduous work tasks, including undesirable bathroom maintenance duties, continued or even intensified post-settlement. *See, e.g.*, Plaintiff's Additional SMF ¶¶ 8-10, 16, 19; LaCourse Aff. ¶ 10. While HallKeen denies this, *see* Defendant's Reply SMF ¶¶ 8-10, 16, 19, for purposes of summary judgment, the court must view the evidence in the light most favorable to LaCourse, as

nonmovant, and give him the benefit of all reasonable inferences, *see Santoni*, 369 F.3d at 598.[89]

As LaCourse argues, *see* Opposition at 14, the assignment of more arduous and unpleasant work duties qualifies as a materially adverse action for purposes of a claim of retaliation, *see, e.g., Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 70-71 (2006) ("Common sense suggests that one good way to discourage an employee . . . from bringing discrimination charges would be to insist that she spend more time performing the more arduous duties and less time performing those that are easier or more agreeable.").[90]

LaCourse acknowledges that individual acts of ostracism and criticism, standing alone, typically do not qualify as materially adverse actions but observes that, collectively with other retaliatory acts, they can rise to that level. *See* Opposition at 14-15. He adds that, in any event, there is caselaw supporting the characterization of discrete disciplinary actions, such as threats of termination, written warnings, and admonishment letters, as materially adverse actions for purposes of a retaliation claim. *See id.* at 15-16.

To the extent that LaCourse invites the court to assess the impact in the aggregate of what might otherwise be nonactionable conduct, he relies on caselaw standing for the proposition that the creation of a "hostile work environment" can constitute a materially adverse retaliatory action. *See id.* at 14-15; *Billings v. Town of Grafton*, 515 F.3d 39, 54 n.13 (1st Cir. 2008)

---

[89] At least one specific instance of the assignment of arduous work tasks of which LaCourse complains occurred pre-settlement, the assignment to dig up a sidewalk in June 2007, *see* Plaintiff's Additional SMF ¶ 11; Plaintiff's Interrog. Resp. ¶ 5. Nonetheless, LaCourse's evidence, construed in the light most favorable to him, fairly can be said to indicate that the disproportionate assignment of arduous work tasks to him continued post-settlement, including the assignment of undesirable bathroom repair and maintenance duties, *see* Plaintiff's Additional SMF ¶¶ 12-19; LaCourse Aff. ¶ 10, the assignment of more strenuous cleaning jobs and less maintenance work, *see* Plaintiff's Additional SMF ¶¶ 21, 23; LaCourse Aff. ¶ 10, and the assignment of snow shoveling, *see* Plaintiff's Additional SMF ¶ 24; LaCourse Aff. ¶ 10.

[90] In *Burlington*, the Supreme Court clarified that "the antiretaliation provision, unlike the substantive [antidiscrimination] provision, is not limited to discriminatory actions that affect the terms and conditions of employment." *Burlington*, 548 U.S. at 64. On the other hand, "[t]he antiretaliation provision protects an individual not from all retaliation, but from retaliation that produces an injury or harm[,]" *id.* at 67, an analysis in which "[c]ontext matters[,]" *id.* at 69.

("[R]etaliatory actions that are not materially adverse when considered individually may collectively amount to a retaliatory hostile work environment."); *Noviello v. City of Boston*, 398 F.3d 76, 91 (1st Cir. 2005) ("[W]e hold that, under Massachusetts law as under Title VII, subjecting an employee to a hostile work environment in retaliation for protected activity constitutes an adverse employment action (and, thus, triggers the statutory prophylaxis).").

Yet, "[t]o date, . . . it remains an open question in Maine whether a retaliatory hostile work environment . . . constitutes an adverse employment action in the context of a MWPA claim." *Bodman v. State of Me., Dep't of Health & Human Servs.*, No. 2:10-cv-105-GZS, 2011 WL 2118946, at *16 (D. Me. May 26, 2011)(citing *Blake v. State*, 2005 ME 32, ¶ 10, 868 A.2d 234, 238). In any event, even assuming *arguendo* that the Law Court would recognize such a claim, LaCourse fails to explain how the facts of his case meet its elements. *See Blake*, 2005 ME 32, ¶ 8, 868 A.2d at 237-38 ("To demonstrate the presence of a hostile work environment, an employee must show repeated or intense harassment sufficiently severe or pervasive to create an abusive working environment. When determining whether a hostile work environment claim exists, the court must look to all the circumstances, including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.") (citations and internal quotation marks omitted). The absence of reasoned argument on this point precludes consideration of whether, for purposes of summary judgment, LaCourse raises a triable retaliatory hostile work environment claim. *See, e.g.*, *De Araujo v. Gonzáles*, 457 F.3d 146, 153 (1st Cir. 2006) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at

developed argumentation, are deemed waived.") (citation and internal quotation marks omitted).[91]

That said, LaCourse is correct that certain disciplinary actions have been recognized as materially adverse for purposes of a retaliation claim. These include letters of admonishment, *i.e.*, formal reprimands, *see, e.g., Valentín-Almeyda v. Municipality of Aguadilla*, 447 F.3d 85, 97 (1st Cir. 2006); *Calero-Cerezo v. United States Dep't of Justice*, 355 F.3d 6, 13, 25 (1st Cir. 2004), and warnings that further violations may result in employment termination, *see, e.g., Bibiloni del Valle v. Puerto Rico*, 661 F. Supp.2d 155, 175 (D.P.R. 2009) ("[T]he risk of termination . . . is sufficiently severe so as to constitute a materially adverse action for purposes of Title VII. The possibility of such a sanction could undoubtedly be reasonably considered by an employee as a deterrent from exercising his antidiscrimination rights. In other words, being exposed to losing his job would likely dissuade a reasonable person from complaining of possible discriminatory conduct."). *See also Daigle*, 2011 WL 2551572, at *30 (including, in list of adverse employment actions sufficient to carry plaintiff's *prima facie* burden on MWPA claim, written warnings).

LaCourse received two formal written warnings in October 2008, one of which was a "final written warning" accusing him of five policy violations. Plaintiff's Additional SMF ¶¶ 58,

---

[91] In any event, it is doubtful whether, had LaCourse addressed the issue, he could have made a persuasive case of the existence of a retaliatory hostile work environment on the facts presented. With respect to ostracism, he states that supervisors ignored him or failed to greet him, sometimes turning their backs on him, and on at least one occasion bought dinner for a co-worker but not for him. *See* Plaintiff's Additional SMF ¶¶ 8-9; LaCourse Aff. ¶ 10. LaCourse does not explain, and it is not otherwise apparent, how these sorts of slights were sufficiently severe or pervasive to meet the definition of a hostile work environment. *See, e.g., Blake*, 2005 ME 32, ¶ 10, 868 A.2d at 238 ("In order to demonstrate a hostile work environment in the case of a supervisor-subordinate, the subordinate must show that the hostility was severe or pervasive, and that it extended beyond the normal tension that exists in many supervisor-supervisee relationships."). With respect to post-settlement disciplinary actions apart from his termination, LaCourse describes an oral warning in July 2008, a final written warning in October 2008, and a second written warning in October 2008. *See* Plaintiff's Additional SMF ¶¶ 58, 69; Defendant's Reply SMF ¶¶ 58, 69. Again, it is not apparent how these three warnings, even coupled with the described ostracism, were sufficiently severe and pervasive to meet the definition of a hostile work environment.

69; Defendant's Reply SMF ¶¶ 58, 69. These qualify as materially adverse actions for purposes of his retaliation claim.

Thus, LaCourse meets the second prong of his *prima facie* case with respect not only to his termination of employment but also asserted ongoing disproportionate assignment of arduous or undesirable work duties and two formal written reprimands, at least one of which threatened the termination of his employment.

### c.  Third Prong: Causation

HallKeen argues that LaCourse's *prima facie* case founders at the causation stage given the temporal remoteness of his termination on September 4, 2009, from his filing of an MHRC complaint on February 21, 2007, his settlement of that complaint on May 30, 2008, and even the post-settlement disciplinary actions of which he complains, the last of which occurred on October 23, 2008. *See* Motion at 12-13; *see also, e.g., Ahern v. Shinseki*, 629 F.3d 49, 58 (1st Cir. 2010) ("Without some corroborating evidence suggestive of causation – and there is none here – a gap of several months cannot alone ground an inference of a causal connection between a complaint and an allegedly retaliatory action.").

In so arguing, HallKeen minimizes LaCourse's evidence that he was subjected to ongoing arduous work assignments that actually intensified post-settlement, as well as several allegedly unfounded disciplinary measures, through the time of his termination. It is true that 15 months elapsed between the time of the filing of the MHRC complaint and any post-settlement, and therefore possibly actionable, conduct by HallKeen, and that such timing, standing alone, creates no inference of retaliatory motive. *See, e.g., id.*

Nonetheless, "in discrimination cases, evidence of discrimination occurring outside an actionable time period or included in a previous settlement agreement may constitute relevant

background evidence in determining discriminatory and retaliatory conduct." *Twyman v. Dilks*, No. CIV. A. 99-4378, 2000 WL 1277917, at *4 (E.D. Pa. Sept. 8, 2000). *See also, e.g., Douglass v. National Fed'n of Indep. Bus.*, Nos. 94-35376, 94-36090, and 94-36200, 1995 WL 579640, at *2 (9th Cir. Oct. 2, 1995) ("Evidence of discrimination occurring outside an actionable time period may constitute relevant background evidence in determining present discriminatory action.").

Moreover, "[a]n absence of a close temporal relationship does not preclude a finding of retaliation." *Osher*, 703 F. Supp.2d at 68. "In cases lacking temporal proximity, a plaintiff can still establish a causal link if the employer engaged in a pattern of antagonism in the intervening period." *Twyman*, 2000 WL 1277917 at *9. *See also, e.g., Che v. Massachusetts Bay Transp. Auth.*, 342 F.3d 31, 38 (1st Cir. 2003) (quoting with favor *Kachmar v. SunGard Data Sys., Inc*., 109 F.3d 173, 177 (3d Cir. 1997) ("where there is a lack of temporal proximity, circumstantial evidence of a 'pattern of antagonism' following the protected conduct can also give rise to the inference' that a causal connection exists").

Viewing the evidence in the light most favorable to LaCourse and drawing all reasonable inferences in his favor, such a pattern of antagonism can be discerned in this case. LaCourse avers that, commencing shortly after his filing of the MHRC complaint and continuing post-settlement, he was consistently given unfavorable work assignments, and that commencing shortly after the filing of his MHRC complaint and continuing until his termination, he was subject to ostracism by supervisors. *See* Plaintiff's Additional SMF ¶¶ 8, 10; LaCourse Aff. ¶ 10. He further complains that, following the settlement, he was subjected to several unfounded or overly harsh criticisms and reprimands. *See, e.g*., Plaintiff's Additional SMF ¶¶ 39-41; Exh. 2 to Paradis Aff.; Plaintiff's Additional SMF ¶¶ 42, 48; LaCourse Dep. at 38, 43, 45; Exh. 5 to

Paradis Aff.; Plaintiff's Additional SMF ¶¶ 58, 69-70; Defendant's Reply SMF ¶¶ 58, 69; Cleveland Dep. at 12.

This evidence, in totality, suffices to raise an inference of causality for purposes of making out a *prima facie* case under the MWPA. *See, e.g., EEOC v. Avecia, Inc*., 151 Fed. Appx. 162, 164 (3rd Cir. 2005) (reasonable jury could find causal connection, despite one-year gap between protected activity and termination, in view of pattern in the interim that included unfavorable performance reviews, increased management scrutiny, tension with co-workers, and termination letter).

### 2. Employer's Showing of Nonretaliatory Reason for Action

LaCourse does not dispute that HallKeen meets its burden of setting forth a legitimate, nonretaliatory reason for his termination. *See* Opposition at 17. However, he observes that HallKeen's motion fails to articulate any nonretaliatory reason for the other conduct of which he complains, namely, the denial of the annual pay raise, more arduous job assignments, ostracism, unwarranted reprimands, extreme supervision, the creation of rules designed for him alone, and false performance reviews. *See id*. On that basis alone, he argues, HallKeen fails to demonstrate its entitlement to summary judgment. *See id*.

While HallKeen focuses on the legitimacy of LaCourse's employment termination, it does articulate, in passing, legitimate, nonretaliatory reasons for its July 2008 verbal warning for failure to respond to a radio call while on duty and its October 2008 written warnings for (i) telling another employee, Mike Cleveland, about the Settlement Agreement in violation of paragraph 3 of that agreement, (ii) removing a television from an apartment unit without permission and against management policy, and (iii) harassing Cleveland. *See* Opposition at 14. However, HallKeen fails, in its motion, to articulate legitimate reasons for the alleged ongoing

disproportionate assignment of arduous work tasks to LaCourse or for certain of the bases for its October 14, 2008, written warning: (i) continuing to take bread and sweets delivered to the residents and (ii) making comments about co-worker or company issues. *See id.*; *see also* Plaintiff's Additional SMF ¶¶ 59, 63; Defendant's Reply SMF ¶¶ 59, 63. In view of those omissions, HallKeen fails to demonstrate its entitlement to summary judgment as to the entirety of LaCourse's complaint.

### 3. Employee's Showing of Pretext

I turn to the final question presented by HallKeen's motion: whether LaCourse adduces sufficient evidence to raise a triable issue that his termination in August 2009 was retaliatory in nature. *See* Motion at 16-17. I conclude that he does.

A reasonable trier of fact, viewing the record in the light most favorable to LaCourse, could determine that the termination was pretextual and motivated by retaliatory animus on the bases that:

1.      HallKeen had no policy concerning responses to calls about smoke detectors, and Barakat had never discussed the matter with LaCourse. *See* Plaintiff's Additional SMF ¶ 92; Defendant's Reply SMF ¶ 92; Plaintiff's Additional SMF ¶ 101; Barakat Dep. at 29-30.

2.      HallKeen had a policy requiring a response to calls involving safety within 30 minutes. *See* Plaintiff's Additional SMF ¶ 93; Moody Dep. at 17-18. However, HallKeen acknowledges that LaCourse did respond within 30 minutes. *See* Reply at 4.[92]

3.      LaCourse offered to personally respond to Jenkins' call but warned her that the drive would take 45 minutes. *See* Plaintiff's Additional SMF ¶ 96; LaCourse Dep. at 79-80. She

---

[92] LaCourse controverts HallKeen's assertion that it also had a policy that the on-call maintenance technician must physically respond to a call and go to the building if it is a maintenance emergency, at least insofar as any such policy might touch on a smoke detector malfunction. *Compare* Defendant's SMF ¶ 49 *with* Plaintiff's Opposing SMF ¶ 49 (citing, *inter alia*, Barakat Dep. at 29-30; LaCourse Dep. at 82, 111).

was happy to have Bouchard respond instead.  *See* Plaintiff's Additional SMF ¶ 99; Defendant's Reply SMF ¶ 99.

4.      LaCourse told Bouchard that, if the detector required anything more than a battery, to call to let him know so that he could come in.  *See id.* ¶ 100.[93]

5.      Neither Bouchard nor Jenkins called LaCourse to inform him that Bouchard had been unable to fix the problem by replacing the battery and had resorted to disabling the smoke detector.  *See id.* ¶¶ 81-82, 100.

6.      When LaCourse told Barakat about the Jenkins call on the Monday morning following the incident, Barakat asked whether LaCourse had called Bouchard, stating that he (Barakat) had done so himself in the past.  *See* Plaintiff's Additional SMF ¶¶ 102-03; LaCourse Dep. at 82, 111.  Barakat agreed with LaCourse's action.  *See* Plaintiff's Additional SMF ¶ 103; LaCourse Dep. at 111.

7.      The decision-maker in the termination, Wilbur, relied on a report from Paradis in choosing to terminate LaCourse's employment and did not independently interview LaCourse, Bouchard, Barakat, or Moody about it.  *See* Defendant's SMF ¶ 86; Paradis Aff. ¶ 18; Plaintiff's Additional SMF ¶ 111; LaCourse Dep. at 83-84; Moody Dep. at 25-26; Barakat Dep. at 14; Bouchard Dep. at 33.

8.      Paradis had previously issued unwarranted or unduly harsh disciplinary warnings to LaCourse and had previously recommended that he be fired.  A reasonable trier of fact crediting LaCourse's version of events could find, for example, that the following actions were unwarranted or, in the extenuating circumstances claimed by LaCourse and assertedly known to

---

[93] In the circumstances, in which Jenkins was understandably eager to stop the smoke detector from beeping as soon as possible and it was not then clear that the detector required anything more than a battery change, the deputation of Bouchard, a resident who happened to have some maintenance experience, to check into the problem can be viewed as an expedient solution.

Paradis, excessively harsh:

      A.     On March 28, 2008, Paradis directed LaCourse to park in assigned employee parking, although HallKeen had no policy prohibiting employees to park in a tenant's spot with the tenant's permission. *See* Defendant's SMF ¶ 16; Paradis Aff. ¶ 3; Plaintiff's Additional SMF ¶ 29; LaCourse Aff. ¶ 11.

      B.     On April 9, 2008, Paradis issued a verbal warning to LaCourse for failing to respond to pages on March 29, 2008, and stated that she would be monitoring his call activity. *See* Plaintiff's Additional SMF ¶ 41; Defendant's Reply SMF ¶ 41. However, LaCourse's pager did not always work and did not work on the evening in question, *see* Plaintiff's Additional SMF ¶¶ 32, 37; LaCourse Dep. at 38-39, the answering service had failed to call LaCourse that evening when he did not answer his pages, as he had instructed it to do, *see* Plaintiff's Additional SMF ¶¶ 33, 37; LaCourse Dep. at 38-39, and Paradis herself noted in her memorandum of her conversation with LaCourse, "Keith stated that he did not receive a page. Keeps pager with him all night, it did not go off[,]" Plaintiff's Additional SMF ¶ 40; Defendant's Reply SMF ¶ 40.

      C.     On July 22, 2008, LaCourse received a verbal warning for not responding to calls in the wake of an incident in which Paradis allegedly called him on his radio and he did not respond. *See* Defendant's SMF ¶ 37; Paradis Aff. ¶ 9. However, the radios were old and needed to be replaced, *see* Plaintiff's Additional SMF ¶ 43; LaCourse Dep. at 43-44, Paradis herself had stated that the radios were no good, *see* Plaintiff's Additional SMF ¶ 42; LaCourse Dep. at 43-44, and LaCourse always responded to calls and pages that he actually received, *see* Plaintiff's Additional SMF ¶¶ 48, 68; LaCourse Dep. at 38.

D. On October 10, 2008, Paradis requested that LaCourse be fired, based on four alleged violations of company of policy. *See* Plaintiff's Additional SMF ¶ 49; Defendant's Reply SMF ¶ 49. These included a false allegation that LaCourse had entered her office when it was closed, *see id.* ¶ 50; LaCourse Aff. ¶ 12, as well as an alleged violation of a company policy that, according to LaCourse, did not exist: a policy against taking property abandoned by a former tenant, *see* Plaintiff's Additional SMF ¶ 52; Defendant's Reply SMF ¶ 52; Plaintiff's Additional SMF ¶ 55; LaCourse Aff. ¶ 13.

E. Although HallKeen management rejected Paradis' request to terminate LaCourse at that time, he received a final written warning on October 14, 2008, accusing him of five policy violations. *See* Plaintiff's Additional SMF ¶¶ 57-58; Defendant's Reply SMF ¶¶ 57-58. The basis for one of those alleged policy violations, making "comments about co-worker or company issues[,]" *id.* ¶ 63, was not explained, *see id.* ¶ 64. The remaining four alleged violations included two of those discussed above, the taking of personal property belonging to a current or past tenant and the failure to respond to radio calls or pages. *See id.* ¶¶ 65, 67.

F. On October 23, 2008, LaCourse received a written warning for allegedly harassing and creating a hostile work environment for Mike Cleveland. *See id.* ¶ 69. Cleveland testified, however, that he got along "pretty good" with LaCourse and did not really have any issues with him. *See* Plaintiff's Additional SMF ¶ 70; Cleveland Dep. at 12.

9. The termination occurred against a backdrop of ongoing ostracism and assignment of less desirable, arduous job duties, commencing shortly after LaCourse's filing of his MHRC complaint and continuing post-settlement and even through the date of his

termination.  *See* Plaintiff's Additional SMF ¶¶ 8, 10; LaCourse Aff. ¶ 10.[94]

In the totality of these circumstances as viewed in the light most favorable to LaCourse, a reasonable fact-finder could find that the stated reason for LaCourse's termination was pretextual and that the action stemmed from a long-running retaliatory animus.

## IV.  Conclusion

For the foregoing reasons, I recommend that the court **DENY** the Motion.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within fourteen (14) days after being served with a copy thereof.  A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 31st day of August, 2011.

/s/  John H. Rich III
John H. Rich III
United States Magistrate Judge

---

[94] HallKeen argues that, even if the pre-settlement conduct described by LaCourse properly can be considered as background information, neither that conduct nor the post-settlement disciplinary incidents of which he complains bear on his 2009 termination because none of those incidents was taken into account by Wilbur, the decisionmaker. *See* Reply at 2, 5, 7.  This argument is circular, in the sense that it obliges the court to accept as a starting premise that Wilbur's stated basis for the termination was in fact the real basis.  Yet, this is the very point at issue for purposes of the pretext prong of the *McDonnell-Douglas* burden-shifting analysis.  LaCourse's evidence of an ongoing pattern of antagonism commencing within less than a month of the filing of his MHRC complaint, together with his evidence that (i) Wilbur relied on information gleaned from Paradis, who, according to LaCourse, began meting out unwarranted or overly harsh discipline *prior to* the settlement of his MHRC action and continued to do so post-settlement, and (ii) he (LaCourse) did not violate company policy, at least as expressed by supervisor Barakat, in calling upon Bouchard to respond in person to Jenkins, suffice for purposes of summary judgment to create a triable issue of a causal nexus between retaliatory motive and LaCourse's termination.